RAFAEL DE J. CORDERO, MANAGER OF THE STATE INSURANCE FUND, Appellant, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; ANTONIA ORTIZ, ETC., Claimant.

No. 246. Argued June 22, 1942.—Decided November 4, 1942.

George A. Malcolm, Attorney General, G. Benítez Gautier, Deputy
Attorney General, and G. Atiles Moréu, A. de Jesús Matos, and
A. Correa Suárez, Legal Advisers of the State Insurance Fund,
for appellant. Pedro M. Porrata for claimant.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Domingo Báez, a workman, died on November 21, 1938,
in consequence of an accident which occurred while he was
employed as a helper on a truck belonging to Sucesión Lucas
P. Valdivieso. After an investigation had been duly made,
the Manager of the State Insurance Fund, on April 5, 1939,

held that the accident arose out of the cause of employment, and that the only person who depended on the workman for support was his legitimate mother, Evangelina Rodríguez widow of Báez, for which reason he awarded her the entire compensation, amounting to $1,754.62, payable $30 monthly, with retroactive effect to the month after the death of the workman. Subsequently, on October 13, 1939, said beneficiary filed with the manager a petition for an advance payment of $600, chargeable to the compensation awarded and on the following November 29, after the corresponding investigation, the Manager granted the same, subject, of course, to the approval of the Industrial Commission, which approval was given on December 4, 1939.

At this stage, when nine months and twenty-six days had elapsed after the workman's mother had been declared his sole beneficiary and when there only remained $659.62 of the compensation to be paid to the latter, Antonia Ortiz, represented by her attorney, on January 31, 1940, sent to the manager a copy of the letter which she had written to the Industrial Commission, informing the latter that she had been Domingo Báez's sweetheart and was the mother of a posthumous child by said workman. Two days later, Antonia Ortiz filed with the State Insurance Fund her formal petition for compensation on behalf of her son, José Manuel Ortiz. As soon as the manager heard of Antonia Ortiz's petition, he stopped the monthly payments to Evangelina Rodríguez, mother of the workman, until this second claim should be finally decided, and took charge of said balance. A week later the manager made an investigation as to the allegation of a posthumous child, and on March 15, 1940, he denied her petition on the ground of insufficiency.

On March 21, 1940, Antonia Ortiz appealed to the commission which, on April 17, 1942, after hearing the interested parties, finally decided that José Manuel Ortiz was the posthumous child of the workman Domingo Báez and was

entitled to a share of the compensation which had been awarded to the mother of the workmen, and fixed said share at one-half of the above-mentioned sum of $1,754.62.

The manager moved for a reconsideration which was denied, and thereupon he filed this petition for review.

 Upon a cursory examination of the facts of this case it will be easily seen that the Industrial Commission, in rendering its decision of April 17, 1942, and in denying the reconsideration thereof on May 5, overlooked an essential fact which would have permitted it to decide the controversy easily and rapidly. The workmen's accident compensation acts aim, in cases of death, to award compensation to the person who is in fact prejudiced by the death of the workman, that is, to the one who depended on the latter for his support, regardless of the degree of relationship when such dependency does not exist. Hence the aphorism that workmen's compensation acts are laws of dependency and not of inheritance. This principle is embodied in subdivision 5 of §3 of our present act, which, in dealing with compensation in cases of death, prescribes in its pertinent part as follows:

"Should the workman or employee leave a widow, parents, legitimate or illegitimate children, posthumous children, whether or not natural or adoptive children, or grandchildren, *any of whom* were wholly or partly dependent for their support on the earnings of the deceased workman or employee at the time of his death, they shall receive a compensation of from one thousand (1,000) to three thousand (3,000) dollars, which shall be graduated according to the earning capacity of the deceased workman or employee and to his probabilities of life, in accordance with such rules as the Manager of the State Fund shall prepare, which rules shall have the force of law after they are approved by the Industrial Commission and by the Governor, and promulgated in accordance with law. Said compensation shall be distributed among the aforesaid relatives according to the condition, needs, and degree of relationship and dependence of each, as the Manager may decide in accordance with the facts."

16

If we examine carefully subdivision 5 of §3 above transcribed, we shall see that after making mention, among others, of the widow, parents, legitimate or illegitimate children, adoptive and posthumous children, as entitled to compensation, it expressly adds:

". . . . *any of whom were wholly or partly dependent for their support* on the earnings of the deceased workman or employee at the time of his death . . ."

We thus see that dependency is an indispensable requisite for the right to share in an award. But in the instant case, as we shall see, the child did not depend on the earnings of the workman. At first it strikes one as anomalous that a posthumous child should have depended for his support on his father. Certainly he could not have depended directly, but indirectly through his mother while the latter 'was pregnant. It is true that, pursuant to §24 of the Civil Code, the birth determines the juridical personality, but it is nonetheless true, as we have seen, that the Workmen's Compensation Act extends its scope to cover the workman's child during its prenatal existence, inasmuch as subdivision 5 of §3 prescribes that a posthumous child is entitled to a share in the award, with the same right as the other children born before the death of the father, only if said child should have depended wholly or partially for his support on the earnings of the workman. See the arguments on this point in the case of *Sabater* v. *District Court*, 54 P. R. R. 94.

It has been held by the Supreme Court of Pennsylvania, in dealing with legitimate posthumous children, that where the husband and wife are living separately at the time of the death of the workman, and the husband with the consent of the wife did not contribute from his earnings to her support, it will be understood that the wife acquiesced in the repudiation of the husband's legal obligation of support and it will be conclusively presumed that the posthumous child

did not depend for his support on the earnings of the father. But likewise where the wife has not repudiated the said obligation, even though the husband fails to perform his duty against her will, this default on the part of the husband does not prejudice his wife nor the posthumous child and both, the wife and the child, are considered as dependent on the workman and entitled to a share of the compensation awarded at the time of his death. *Shimkus* v. *Philadelphia & Reading, Coal & Iron Co.*, (1924) 124 A. 335, and cases cited. It is obvious that the same rule should be applied *mutatis mutandi* where legitimate and nonposthumous children are involved, for the same law should be applied to the same reasoning.

But this rule is not applicable to the present case. The conjugal relationship between the workman and the mother of the posthumous child did not exist. At no time did she depend for her support on the earnings of the workman, since she testified, and it likewise appeared from all the evidence introduced, that they only had a love affair; that their relations were kept secret, to such an extent that her own mother, on whom Antonia Ortiz depended for her support, was not aware of such relations until her daughter informed her at the time of the workman's death. Under these circumstances, we must follow the logical trend of thought to determine if the posthumous child is entitled to a share of the compensation and ask ourselves: Did the mother depend for her support, wholly or partially, on the earnings of the workman while she was pregnant with his posthumous child and until the death of the alleged father?

In the instant case we must answer in the negative. It fully appears from the evidence that the mother at no time depended on the workman, and this being true, the indispensable requisite of dependency is lacking and the claimant is not entitled to a share of the compensation. It may seem harsh to deprive the child of his share, if in fact he is the son of the workman, but so long as the Workmen's Compen-

18

sation Act is a law of dependency and not of inheritance and the Legislature does not repeal or modify subdivision 5 of §3 of said act, we can not decide this question in any other fashion without violating the letter and the spirt of said statute.

In *Sabater* v. *Court, supra,* it was held that, pursuant to the Workmen's Compensation Act of 1928, posthumous children were entitled to compensation at the time of the death of their father even though said children were not expressly included among the persons who, according to said act, had a right to a share of the compensation. But we can easily draw a distinction between that case and the one at bar. In the former case it was held that the mother was a concubine of the father, and as such was dependent on him for her support up to the time of his death.

Strictly speaking, that was the error committed by the commission. Disregarding the indispensable requisite of dependency, it focused its attention on the question of whether the claimant was in fact the posthumous child of the workman, and upon deciding that it was, on that sole ground, he ordered that the compensation awarded to the mother of the workman, who actually depended for her support on him, be divided in equal parts between the mother and the alleged grandson who was not dependent on him.

Up to this point we have not mentioned the jurisdiction of the Industrial Commission to determine the filiation of claimants for compensation for the death of a workman. The decision of this question is not strictly necessary in order to reach the conclusion which we are bound to reach on the grounds above set forth. However, something must be said in regard to this matter, since our silence might lead to error. In our opinion the commission invaded the jurisdiction of the courts in seeking to determine the paternity of the claimant. If, in order to pass upon a declaration of heirship of a workman, the law itself requires that resort be had

to a judicial tribunal, the more so must one resort to such a tribunal where there is involved a question of filiation of a son, whether he is posthumous or not.

It might be argued that since the Industrial Commission lacks jurisdiction to determine the paternity of the claimant, the whole proceeding had is void and, therefore, that the testimony of Antonia Ortiz and her witnesses, which tended to show that she did not depend for her support, wholly or partially, on the earnings of the workman, Domingo Báez, should be disregarded. . In view of the circumstances of this case, this theory would be untenable, for, although the commission is not empowered to determine the question of filiation, nevertheless, it has power to inquire into the dependency relationship of the persons who claim compensation and to fix the share of each of them in the award. Since it appeared from the testimony of Antonia Ortiz that she was not such a dependent, and, consequently, neither was her son, the proper thing to do was to close the investigation at that point and not even ask for a judicial declaration on the question of paternity, inasmuch as said declaration would be rendered useless once she admitted the lack of such dependency.

There still remains one more question before closing this opinion. In the prayer of the petition for review the Manager of the State Fund asks us to reverse the decisions appealed from rendered on April 17 and on May 5, 1942, whereby it is ordered in the first and confirmed in the second that payment be made to the child José Manuel Ortiz of one-half of the award granted amounting to $1,754.62. The manager prays that in lieu thereof another decision be rendered granting to said minor the unpaid balance of said compensation, now in the hands of the manager, that is, $659.62. Notwithstanding said prayer, since, according to the reasoning of the opinion, that amount does not belong to the claimant child, but to the mother of the work-

man, who is not represented by the manager in the present case, the beneficiary can not be prejudiced by the statements made by the manager in the prayer filed by him. Besides, we must not forget that we are reviewing a decision of an administrative tribunal and regard should be had for the significant distinction existing between a judicial and an administrative proceeding. The former, more rigorous and formal than the latter, adheres exclusively to the record as made by the parties, or to some information of which the tribunal may take judicial notice, in deciding the controversies. In contrast, the latter departs from the strictness of the former and rejects all formality that will affect the fair disposition of each case. See Landis, The Administrative Process, page 38 *et seq.* Analogous to this principle of administrative process, §35 of our Workmen's Compensation Act provides that: "For the prosecution, liquidation, or decision of their cases before the Manager of the State Fund or before the Industrial Commission, workmen or employees do not require the services of attorneys . . . " We recently applied this principle to the case of *Tomás* v. *Industrial Commission*, 59 P.R.R. 852. In the cited case the widow and children of the workman sought compensation for the death of the latter while working for an employer who was not insured. For reasons which do not appear from the record, the attorney for the claimants introduced no evidence tending to show the dependency relationship between the claimants and the workman. Notwithstanding this error in the evidence, the commission found for the claimants and the appellants assigned as error, among others, that there was no evidence tending to show the dependency relationship. If we had followed the practice of the judicial process, adhering exclusively to the record, we would have felt bound to reverse the decision appealed from on that sole ground and thus deprive the beneficiaries of the workman of their right to the award. But this court, realizing that the deci-

sion on review was from the Industrial Commission, departed from the strictness of the judicial process, and yielded to the flexibility of the administrative process by remanding the case to said commission with instructions to admit evidence regarding any dependency relationship that might have existed between the claimants and the deceased workman. In this way we prevented that, through mere error or inadvertence in the introduction of the evidence, the furtherance of justice be imperiled.

If the purpose of the law is that the proceedings before the manager and the commission should be as simple as possible, and in harmony with that purpose the act itself provides that the workman need not require the services of attorneys, would we not be infringing, perhaps, the intention of the legislator and committing a most serious injustice by depriving the workman, wholly or partially, of the compensation legally due him, for the sole reason that he did not present his case correctly before the Industrial Commission?

For the reasons stated the decisions appealed from must be reversed, and the petition of the child José Manuel Ortiz, represented in this case by his mother Antonia Ortiz must be denied, and it is hereby ordered that the sum of $659.62, the balance of the award granted in this case to Evangelina Rodríguez widow of Báez, be paid to said beneficiary in the installments as provided by the Manager of the State Fund.

Mr. Justice Travieso did not participate herein.